IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | Criminal No. 1:19-cr-009 |
| v. | ) | |
| | ) | |
| LILY SHIPPING LTD., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## PLEA AGREEMENT

### 1. PARTIES TO THE AGREEMENT

This agreement is entered into by Defendant Lily Shipping Ltd. ("LILY"), the United States Attorney for the District of the Virgin Islands, and the Environmental Crimes Section of the Department of Justice, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). This agreement specifically excludes and does not bind any other territorial, state, or federal agency, including the other United States Attorneys and the Internal Revenue Service, from asserting any civil, criminal, or administrative claim against the Defendant.

### 2. TERMS

The parties agree to the following terms:

a. Defendant will plead guilty to Counts One through Four of the Information. Counts One through Three each charge a violation of Title 33, United States Code, Section 1908(a), each of which carries a maximum sentence of a $500,000.00 fine, a maximum term of probation of five years, and a $400.00 special monetary assessment. Count Four charges a violation of Title 18, United States Code, Section 1505, which carries a maximum sentence of a $500,000.00 fine, a maximum term of probation of five years, and a $400.00 special monetary assessment.

b. Defendant acknowledges that the government can prove the following essential elements of Counts One through Four as set forth in the Information:

COUNT 1:    (1) Defendant was a person; and

(2) Defendant owned the *M/T Ocean Princess*, a vessel operated under the authority of a country other than the United States ("U.S."); and

(3) Defendant owned the *M/T Ocean Princess* as it operated in the U.S. Caribbean Emission Control Area; and

(4) While the *M/T Ocean Princess* operated within the U.S. Caribbean Sea Emission Control Area, the Defendant, acting through an agent or employee, knew the vessel used fuel that exceeded the sulfur limit of 0.10% by weight.

All in violation of Title 33, United States Code, Section 1908(a); MARPOL Protocol Annex VI; and Title 40, Code of Federal Regulations, Sections 1043.10(b), .20, .30(a) & .60(b).

COUNT 2:    (1) Defendant was a person; and

(2) Defendant owned the *M/T Ocean Princess*, an oil tanker of 150 gross tons or above, which operated under the authority of a country other than the United States; and

(3) Defendant, acting through an agent or employee, knowingly maintained an Oil Record Book, Part I, that did not accurately record the bunkering of fuel from internal transfers of cargo from the cargo tanks; and

(4) The knowing failure to accurately maintain the Oil Record Book, Part I, occurred in the navigable waters and jurisdiction of the United States.

All in violation of Title 33, United States Code, Section 1908(a); Title 33, Code of Federal Regulations, Sections 151.09(a)(5), 151.25(a), 151.25(d)(5), and 151.25(e)(2); and Title 18, United States Code, Section 2.

COUNT 3:    (1) Defendant was a person; and

(2) Defendant owned the *M/T Ocean Princess*, a vessel operated under the

2

authority of a country other than the United States; and

(3) Defendant, acting through an agent or employee, knowingly maintained false bunker delivery notes on the vessel; and

(4) Within the navigable waters and jurisdiction of the United States.

All in violation of Title 33, United States Code, Section 1908(a); and Title 40, Code of Federal Regulations, Sections 1043.10 and .70; and Title 18, United States Code, Section 2.

COUNT 4:    (1) Defendant was a person; and

(2) The Defendant, acting through an agent or employee, corruptly; and

(3) Obstructed, impeded or endeavored to impede any pending proceeding held before any department or agency of the United States.

All in violation of Title 18, United States Code, Section 1505.

c. Defendant is pleading guilty because Defendant is in fact guilty of the charges contained in Counts One through Four. In pleading guilty to these offenses, Defendant acknowledges that should the case go to trial, the government could present evidence to support these charges beyond a reasonable doubt. The Factual Basis is as follows:

Motor Tanker ("M/T") Ocean Princess

1.     The *M/T Ocean Princess* was a 5,364 gross ton tank ship bearing the International Maritime Organization Number 9268291 and registered in Panama. The *M/T Ocean Princess* was operated by Ionian Shipping & Trading Corp. ("IONIAN ST") and owned by LILY. Ionian Management Inc. ("IONIAN M") managed the commercial cargo interests of the *M/T Ocean Princess,* including when to load and unload cargo, and authorized cargo to be transferred from the cargo to the bunker tanks. The *M/T Ocean Princess* was engaged in international ocean-going commerce transporting petroleum products in the Caribbean including from St. Croix, United States Virgin Islands.

3

2.      The *M/T Ocean Princess* had a crew consisting of, among others, a Master, Chief Officer, Chief Engineer, Second Officer, Second Engineer, Third Engineer, and several lower-level crewmembers known as Oilers, Wipers, Able-Bodied Seamen and a Fitter.

3.      The *M/T Ocean Princess* required hydrocarbon-based fuel to power its main engine and generators.

LILY

4.      LILY was registered in the Marshall Islands on or about June 8, 2009, with the same operating address as IONIAN ST, 82 Vasileos Pavlou Street, Voula, Greece 166 73. LILY owned the *M/T Ocean Princess* since on or about November 1, 2009.

5.      At all times relevant in this Factual Basis and the Information, between on or about January 1, 2016, and September 8, 2018, the Master, Chief Officer, and Chief Engineer serving on board the *M/T Ocean Princess* were acting within the scope of their employment or agency on behalf of LILY, and for the benefit of LILY, at least in part.

Process of Transferring Cargo into the Bunker Tanks

6.      On vessels such as the *M/T Ocean Princess*, cargo fuel is typically intended to be loaded onboard and then delivered to a customer, whereas bunker fuel is loaded to be used for the propulsion, electrical, and auxiliary systems of the ship. Approximately every four to six weeks, the Master of the *M/T Ocean Princess* would send requests for bunkers and in turn receive an email in return from Employee A at IONIAN M containing authorization for a type and amount of cargo fuel to be transferred to the bunker tanks to be used in the engine room. The Master would then inform the Chief Officer and the Chief Engineer of the authorization and the transfer would be carried out.

Creation of False Bunker Delivery Notes

7.      Every time the *M/T Ocean Princess* took on fuel to be used as bunker, that is fuel for the

propulsion, electrical, and auxiliary systems, a receipt called a Bunker Delivery Note was

required to be created by the delivery facility and stored on the vessel, recording how much

bunker, the quality of the bunker (to include the % of sulfur by weight therein) and other

chemical properties of the bunker. The Bunker Delivery Note could then be inspected by a Coast

Guard Port State Control Officer, among others, to verify what bunkers were on the vessel.

However, on the *M/T Ocean Princess*, the Bunker Delivery Notes were printed from the Chief

Engineer's computer when the vessel would arrive in St. Martin, French West Indies ("F.W.I.")

to deliver cargo. The Chief Engineer would fill out the details on the Bunker Delivery Note and

the Bunker Delivery Note would be counter-signed by Person A from Company A. The Bunker

Delivery Notes falsely claimed that the bunker came from Company A in St. Martin, F.W.I.,

which it did not.

8.      The following nineteen false Bunker Delivery Notes were created on, and onboard, the

*M/T Ocean Princess* while owned by LILY:

| DATE | LOCATION | AMOUNT | SULFUR CONTENT % |
|---|---|---|---|
| Feb 6, 2018 | St. Martin, F.W.I. | 143 | 0.318 |
| Apr 17, 2018 | St. Martin, F.W.I. | 158 | 0.318 |
| Jun 15, 2018 | St. Martin, F.W.I. | 158 | 0.318 |
| Dec 14, 2017 | St. Martin, F.W.I. | 80 | 0.318 |
| Oct 8, 2017 | St. Martin, F.W.I. | 160 | 0.318 |
| Oct 22, 2017 | St. Martin, F.W.I. | 127 | 0.318 |
| Aug 10, 2017 | St. Martin, F.W.I. | 154 | 0.318 |
| May 2, 2017 | St. Martin, F.W.I. | 131 | 0.331 |
| Apr 17, 2017 | St. Martin, F.W.I. | 314 | 0.318 |
| Feb 21, 2017 | St. Martin, F.W.I. | 258 | 0.175 |
| Jan 5, 2017 | St. Martin, F.W.I. | 241 | 0.192 |
| Nov 6, 2016 | St. Martin, F.W.I. | 120 | 0.191 |
| Sep 11, 2016 | St. Martin, F.W.I. | 261 | 0.191 |
| Oct 22, 2016 | St. Martin, F.W.I. | 114 | 0.191 |

| Aug 13, 2016 | St. Martin, F.W.I. | 237 | 0.191 |
| May 20, 2016 | St. Martin, F.W.I. | 328 | 0.186 |
| April 21, 2016 | St. Martin, F.W.I. | 48 | 0.191 |
| April 6, 2016 | St. Martin, F.W.I. | 97 | 0.191 |
| Mar 2, 2016 | St. Martin, F.W.I. | 60 | 0.191 |

False Oil Record Book Entries – Part I & II

9.      There were two relevant required entries in the Oil Record Books on the *M/T Ocean Princess*. First, in the Oil Record Book Part I (which relates to engine room operations) entries were required to be made documenting the bunkering of fuel. 33 C.F.R. § 151.25(d)(5). No entries were made in the Oil Record Book Part I documenting the loading of fuel from the cargo tanks into the bunker tanks, as required. The Master signed pages in the Oil Record Book Part I, which falsely claimed bunker was loaded from a shoreside facility on the dates and locations in the following table:

| DATE | PORT | COUNTRY |
| --- | --- | --- |
| Jan 27, 2016 | Galisbay Port | St. Martin, F.W.I. |
| Mar 2, 2016 | Galisbay Port | St. Martin, F.W.I. |
| Apr 6, 2016 | Galisbay Port | St. Martin, F.W.I. |
| Apr 21, 2016 | Galisbay Port | St. Martin, F.W.I. |
| May 20, 2016 | Galisbay Port | St. Martin, F.W.I. |
| Aug 13, 2016 | Galisbay Port | St. Martin, F.W.I. |
| Oct 22, 2016 | Galisbay Port | St. Martin, F.W.I. |
| Nov 6, 2016 | Galisbay Port | St. Martin, F.W.I. |
| Feb 21, 2017 | Galisbay Port | St. Martin, F.W.I. |
| April 17, 2017 | Galisbay Port | St. Martin, F.W.I. |
| May 2, 2017 | Galisbay Port | St. Martin, F.W.I. |
| Aug 10, 2017 | Galisbay Port | St. Martin, F.W.I. |
| Oct 8, 2017 | Galisbay Port | St. Martin, F.W.I. |
| Dec 14, 2017 | Galisbay Port | St. Martin, F.W.I. |
| Feb 6, 2018 | Galisbay Port | St. Martin, F.W.I. |
| Apr 17, 2018 | Galisbay Port | St. Martin, F.W.I. |
| June 15, 2018 | Galisbay Port | St. Martin, F.W.I. |

Second, in the Oil Record Book Part II (which related to cargo operations), entries were required to be made to document the internal transfer of cargo. 33 C.F.R. § 151.25(e)(2). No entries were made in the Oil Record Book Part II that documented the internal transfer of cargo to a bunker tank.

Coast Guard Inspection – Obstruction of Justice

10.    The Coast Guard boarded the *M/T Ocean Princess* on or about July 11, 2018, to conduct a Port State Control examination. During the examination, Coast Guard inspectors discovered the Bunker Delivery Notes that indicated the vessel was combusting non-compliant fuel, that is, fuel that exceeded the maximum sulfur content of 0.10% by weight. The Coast Guard interviewed the Chief Officer and he falsely stated that the vessel took on bunkers at the Galisbay Port in St. Martin, F.W.I. The Chief Officer stated that the vessel took on over 1,000 barrels of Ultra Low Sulphur Diesel at a time. After the Chief Officer was interviewed by the Coast Guard, he proceeded to the messdeck where several junior crewmembers had gathered for coffee. The Chief Officer stated to some of the crewmembers, in response to some questions they had, that if the Coast Guard asked where the ship takes on its bunkers, they were to respond "in St. Martin." The Chief Officer wanted the crewmembers to tell the Coast Guard facts that were consistent with the ship's records, such as the Bunker Delivery Notes, which the Chief Officer knew were false.

Port Calls with False Documents and Use of Non-Compliant Fuel within the U. S. Caribbean Emission Control Area

11.    The *M/T Ocean Princess* entered Limetree Bay in St. Croix, U.S Virgin Islands, within the territory of the United States and the jurisdiction of the District of the Virgin Islands, on or about the following occasions while LILY owned the vessel:

7

| DATE |
|---|
| Jul 10, 2018 |
| Jun 24, 2018 |
| Jun 7, 2018 |
| May 20, 2018 |
| Apr 28, 2018 |
| Apr 10, 2018 |
| Mar 21, 2018 |
| Mar 1, 2018 |
| Feb 12, 2018 |
| Jan 27, 2018 |
| Jan 10, 2018 |
| Dec 19, 2017 |
| Dec 5, 2017 |
| Nov 14, 2017 |
| Oct 23, 2017 |
| Sep 22, 2017 |
| Aug 3, 2017 |
| Aug 18, 2017 |
| Jul 22, 2017 |
| Jul 6, 2017 |
| Jun 15, 2017 |
| Jun 2, 2017 |
| May 4, 2017 |
| Jan 25, 2017 |
| Jan 11, 2017 |
| Jan 3, 2017 |

During each of the port calls listed above, the Oil Record Book Part I was knowingly false in that it did not accurately document the bunkering of fuel. During each of the port calls listed above, the Oil Record Book Part II was knowingly false in that it did not document the internal transfer of cargo into the bunker tanks. During each of the port calls listed above, and while transiting within the U.S. Caribbean Emissions Control Area, the *M/T Ocean Princess* used fuel for combustion that exceeded the 0.10% by weight content of sulfur limit imposed by MARPOL.

    d. Upon the District Court's adjudication of guilt of Defendant for violations of Title 33, United States Code, Section 1908(a) and Title 18, United States Code, Section 1505, the United

States Attorney for the District of the Virgin Islands, and the Environmental Crimes Section of the Department of Justice, will not file any further criminal charges against Defendant arising out of the same transactions or occurrences to which the Defendant has pled.

e. Nothing in this agreement shall protect the Defendant in any way from prosecution for any offense committed after the date of this agreement.

### 3. RULE 11(c)(1)(C) WARNINGS

The Defendant is aware that, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) the Court may accept or reject the plea agreement, or may defer its decision as to its acceptance or rejection until it has considered the pre-sentence report. If the Court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, and afford the Defendant an opportunity to withdraw the guilty plea and advise the Defendant that if the Defendant persists in a guilty plea, the disposition of the case may be less favorable to the Defendant than that contemplated in the plea agreement. In addition, as part of the terms and conditions of this plea agreement, the parties agree that, should the Court envision sentencing the Defendant to a fine or conditions lesser than the recommendation in paragraph 5 below, the United States has the right to withdraw from the plea agreement entirely. United States v Moure-Ortiz, 184 F.3d 1 (1st Cir. 1999).

### 4. SENTENCING GUIDELINES

The parties agree that the imposition of a fine is not governed by the Sentencing Guidelines. That is because, although the offense conduct to which the Defendant is pleading guilty is covered by U.S.S.G. § 2Q1.3, "Mishandling of Other Environmental Pollutants; Recordkeeping, Tampering, and Falsification," and U.S.S.G. § 2J1.2, "Obstruction of Justice," those Guidelines are not listed under U.S.S.G. § 8C2.1, which governs criminal fines for organizations. Accordingly, pursuant to U.S.S.G. § 8C2.10, the sentence of a fine is determined by applying Title 18, United States Code, Sections 3553 and 3572.

## 5. SENTENCING RECOMMENDATIONS

The parties agree, having taken into consideration all of the sentencing factors set forth in 18 U.S.C. §§ 3553 and 3572, that the following sentence should be imposed upon Defendant:

A. Having pleaded guilty to Counts One through Four of the Information, LILY shall (1) pay a criminal fine of $1,500,000.00; (2) pay a special assessment of $1,600.00; (3) be placed on probation for a period of four years, and; (4) implement the requirements set forth for LILY in the Joint Environmental Compliance Plan appended to this plea agreement as Appendix 1.

## 6. WAIVER OF APPELLATE RIGHTS

a. The Defendant is aware that Title 18, United States Code, Section 3742 affords a Defendant the right to appeal the sentence imposed. Acknowledging all this, the Defendant knowingly waives its right to appeal any sentence within the maximum provided in the statute(s) of conviction or the manner in which that sentence was determined, on the grounds set forth in Title 18, United States Code, Section 3742(a) or on any ground whatever, in exchange for the concessions made by the United States in this plea agreement. In addition, the Defendant expressly waives the right to petition under Title 28, United States Code, Section 2255, with the exception of a claim of ineffective assistance of counsel. The Defendant has discussed these rights with its attorneys. The Defendant understands the rights being waived, and the Defendant waives these rights knowingly, intelligently, and voluntarily. This agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b).

b. The parties reserve the right to allocute fully and will recommend that the sentence be in accordance with this plea agreement.

## 7. FINANCIAL TERMS

a. Defendant agrees to cooperate fully with the United States Attorney's Office and specifically agrees that whatever monetary penalties are imposed by the Court will be due and

payable within thirty days of sentencing and subject to immediate enforcement by the United States, pursuant to Title 18, United States Code, Section 3613.

b. Defendant agrees to fully disclose all assets in which it has any interest or over which Defendant exercises control, directly or indirectly, including those held by a nominee or third party. Defendant agrees to truthfully complete the financial statement form provided by the Government, sign it under penalty of perjury, and provide it to both the United States Attorney's Office and the United States Probation Office. Defendant agrees to provide updates with any material changes in circumstances, as described in Title 18, Unites States Code, Section 3664(k), which occur before sentencing, within seven days of the event giving rise to the changed circumstances.

c. Defendant expressly authorizes the United States Attorney's Office to obtain a credit report. Defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the United States Probation Office.

d. Defendant's failure to timely and accurately complete and sign the financial statement, and any update thereto, may, in addition to any other penalty or remedy, constitute Defendant's breach of this plea agreement.

## 8. VICTIM RESTITUTION

a. The Defendant shall make full restitution to the victims regarding the crimes charged. Should the district court identify victim(s) and determine that restitution is due, the district court may require the Defendant to make the restitution payable at once or on a payment schedule.

b. The Defendant agrees that, while the district court sets the payment schedule, this schedule may be exceeded if and when Defendant's financial circumstances change. In that event, and consistent with its statutory obligations, the United States may take any and all actions

necessary to collect the maximum amount of restitution in the most expeditious manner available.

c. The Defendant further understands and agrees that the United States has the obligation and the right to pursue any legal means, including, but not limited to, submission of the debt to the Treasury Offset Program, to collect the full amount of restitution.

d. Based upon the information known to the parties at the time of execution of this plea agreement, there are no known victims.

### 9. **CORPORATE RESOLUTION**

Defendant must present in open court the original corporate resolution duly enacted by the Defendant's Board of Directors authorizing the entry into this plea agreement and pledging to abide by all of its terms and the probationary terms ordered by the Court.

### 10. **CONCLUSION**

There are no other agreements between the United States Attorney for the District of the Virgin Islands, the Environmental Crimes Section of the Department of Justice, and the Defendant. The Defendant enters this agreement knowingly, voluntarily, and upon advice of counsel.

GRETCHEN C.F. SHAPPERT
UNITED STATES ATTORNEY

Dated: 17 APR 2019          By: _____
                                 G. A. Massucco-LaTaif
                                 Criminal Chief

Dated: 17 APR 2019          _____
                                 Kim Chisholm
                                 Assistant United States Attorney

Dated: 22 APR 2019          _____
                                 Kenneth E. Nelson
                                 Senior Trial Attorney
                                 Environmental Crimes Section, DOJ

12

Dated: 23 APR 2019

Briton P. Sparkman
Attorney for Defendant

Dated: 23 APR 2019

Corporate Representative
Lily Shipping Ltd.